[No. 3438.]

## T. H. Strong *v.* The State.

1. Practice — Motion to Set Aside an Indictment. — In a felony case the defense moved to set aside the indictment because the record of the court did not show that it was ever presented by the grand jury of the county. In resistance to this motion, and over objections by the defense, the State was allowed to prove by the clerk of the court that the court records had been destroyed, and that the destroyed record did contain the proper entry of the presentment of the indictment. Thereupon the court overruled the motion to set aside the indictment, and the defense reserved exceptions to the ruling. *Held* error. The motion to set aside was obviously well taken as the record stood, and to obviate it there was a necessity imposed upon the State of substituting the destroyed record; and this could be legally done in no other way than as prescribed by the Revised Statutes, article 1476 *et seq.*, for which see the opinion *in extenso*.

2. Same. — To accomplish the substitution of a record or filed paper which has been lost or destroyed, an order of substitution is an absolute necessity, to which the attention of trial courts and prosecuting attorneys is specially called.

3. Embezzlement — Evidence. — Appellant being on trial for the embezzlement of money intrusted to him for payment to the State Treasurer, the prosecution, in order prove non-payment to the treasurer, introduced a clerk of the treasurer whose duties qualified him to testify of what the treasurer's books did not show, and he testified that the books did not show payment of the money to the treasurer by the defendant. *Held*, that this evidence was correctly admitted over objection by the defense; but *held* further that this negative proof did not suffice to countervail the presumption of innocence, and it was incumbent on the prosecution to introduce the best evidence, viz., the testimony of the treasurer, in proof of the non-payment of the money to him by the defendant.

4. Same. — It was in proof for the State that the defendant, prior to the prosecution, told the prosecuting witness that he, the defendant, did send the money to the treasurer, and had the latter's receipt for it. No receipt was produced or accounted for by the defense. *Held*, that the failure of the defense to produce or account for the receipt added no probative force to the evidence adduced in behalf of the State. See the opinion for the reasons which support this and the preceding ruling.

5. Same — Fact Case. — See the statement of the case for evidence *held* insufficient to sustain a conviction for embezzlement.

Appeal from the District Court of Coleman. Tried below before the Hon. T. B. Wheeler.

The indictment in this case was filed April 7, 1883, and charged that on or about September 12, 1881, Mrs. Margaret Caldwell, in the county of Coleman and State of Texas, " did deliver and intrust to the care and possession of one T. H. Strong, the said Strong being then and there an attorney at law, and pursuing the business and

profession of an attorney at law, $67.50, the same being current money of the United States of America, and of the value of $67.50, a better description of which the grand jury are unable to give; said money as aforesaid being then and there so delivered and intrusted to and received by the said Strong as the agent and attorney of the said Margaret Caldwell, with the understanding and promise that the same was to be by him, the said Strong, sent and paid to the treasurer of the State of Texas, as a payment by the said Margaret Caldwell upon State school land purchased and contracted for by her, the said Margaret Caldwell; and that the said T. H. Strong did then and there so receive and take into his possession the aforesaid described $67.50 as the agent and attorney of the said Margaret Caldwell; and that the said T. H. Strong, attorney and agent of the said Margaret Caldwell as aforesaid, afterwards, to wit, on the 13th day of September, A. D. 1881, in said county of Coleman and State of Texas, without complying with his said agency, undertaking and promise, did embezzle, fraudulently misapply and convert to his own use, without the consent of the said Margaret Caldwell, the owner thereof, the said $67.50, current money of the United States of America as aforesaid, received by him as agent and attorney as aforesaid; against the peace and dignity of the State."

The case came to trial March 19, 1885, and the trial resulted in the conviction of the appellant, with his punishment assessed at a term of two years in the penitentiary.

Mrs. Margaret Caldwell, the owner of the money charged to have been embezzled, testified that on the 12th day of September, 1881, she gave to the defendant the sum of $67.50, to make the final payment upon some school land that she had purchased from the State. Defendant gave to the witness a receipt for the money, and promised to "send it up." Several months afterwards the witness inquired for the patent to the land, and the defendant told her that he had not received it, but had the treasurer's receipt for the money. The patent to the witness's land did not come, and she had to send up the same amount of money she had intrusted to the defendant. Witness never gave her consent for the defendant to appropriate the money she intrusted to him. He had never paid back to her any of the money. He agreed to get her a patent with the money she turned over to him, and that he would make no charge. A few months after she paid the money to him he told her that he had paid the money over to the State Treasurer, and had the treasurer's receipt.

On her cross-examination the witness, speaking of what transpired between her and the defendant, stated that she did not know of anything having been said about the sending the money to the State Treasurer; about all that was said was that he would take the money and "send it up." Witness supposed he knew the proper place. The money was all United States money, some of it in paper currency and some in silver coin. Defendant did not tell witness that he had paid the money to a clerk or inspector, and had his receipt, but that he had paid it to the treasurer and had his receipt. The receipt given by the defendant to the witness was produced and identified by her, and was introduced in evidence by the State. It reads as follows:

"COLEMAN, TEX., Sept. 12, 1881.

"Received from Margaret Caldwell sixty-seven and $\frac{50}{100}$ dollars to be sent as payment on her school land.

"$67.50.                                   T. H. STRONG."

Mrs. Caldwell further testified that she was referred to the defendant as a lawyer who would attend to the sending of her money and the procurement of her patent. She sought him as an attorney and delivered the money to him as her agent and attorney; and he promised to send up the full amount she paid him, get her patent, and charge her nothing.

H. T. Sims, for the State, testified that he knew the defendant in the year 1881, and that defendant was a practicing attorney in Coleman county during the whole of that year.

D. A. Paddleford, for the State, testified that since the 13th of September, 1881, he had sent $35 to the State Treasurer for Mrs. Margaret Caldwell, as a payment upon her school land. The defense reserved exceptions to this testimony.

W. H. Randolph, a clerk in the office of the treasurer of the State of Texas, was the next witness introduced by the prosecution. A clear summary of the substance of his testimony is given in the opinion of the court, in connection with the questions to which it gave rise.

B. H. Pittman, a witness for the defense, testified that he was acquainted with the defendant during the years 1881 and 1882, and with the condition in which the defendant's office was kept. Defendant was very careless with his papers, and they were so carelessly kept that any of them might have been lost.

*H. T. Sims, T. J. White* and *J. C. Randolph* filed an able brief and argument for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

Hurt, Judge.   This is a conviction for embezzlement.   Before arraignment a motion was filed and submitted to the court to set aside and quash the indictment: 1. "Because there is nothing upon the record of the district court of Coleman county showing the time or manner of the presentment of said indictment, or that the same was ever presented by a grand jury of Coleman county."   2. "Because said indictment was never presented by a grand jury of Coleman county."

When this motion was presented to the court, over the objections of the appellant the district attorney was permitted to prove by Perry, the district clerk, the destruction of the record, and that in fact the records of the court did contain this entry.   The appellant excepted, and reserved his bill of exceptions.   The court overruled the motion to set aside and quash the indictment, and the defendant excepted, and reserved another bill of exceptions.

It will not be denied that, as the record then stood, the defendant's motion was well taken.   The question presented is: Could the court amend or substitute the record in the manner in which this record was substituted?

Article 415 of the Code of Criminal Procedure provides that "the fact of the presentment of the indictment in open court by a grand jury shall be entered upon the minutes of the proceedings of the court, noting briefly the style of the criminal action and the file number of the indictment, but omitting the name of the defendant, unless he is in custody or under bond."

We will not pause here to discuss the importance of this entry, remarking by the way that if not made, and the defendant moves at the proper time to set aside and quash the indictment, because of its omission, the indictment should be quashed.   This has been held in a number of cases.

And while it is true that the Code makes no provision for the substitution of any papers in a case except the indictment or information, and in providing the mode of substitution of these papers it does not expressly require that the defendant shall have notice of the proceedings; still, as this entry is an important one, and, if destroyed, must be substituted, evidently it comes under and must be controlled by article 1475 of the Revised Statutes.   The said article provides: "Whenever the record and papers of a cause, or any part thereof, may be lost or destroyed, either before or after the trial, the same may be supplied by either party, on motion before the court, upon three days' notice to the adverse party or his attorney."

Article 1476: "Such notice shall be in writing and signed by the

party or his attorney, and verified by affidavit. It shall state the loss or destruction of such record or papers, and shall be accompanied by certified copies of the originals, if they can be had; if not, then substantial copies thereof, as near as may be.

" Article 1477: If the adverse party admit the correctness of such copies, and the court be satisfied that they are correct copies of the substance of the originals, an order shall be made substituting such copies for the originals.

"Article 1478: If their correctness be not admitted, or if the court do not find them to be correct, the parties shall submit their respective statements to the judge, and he shall hear proof as to the contents of such lost records and papers, and correct copies thereof shall be made up under the direction of the judge.

" Article 1479: The adverse party may, in the same proceedings, supply any other portions of such records and papers desired by him.

" Article 1480: The parties may, by consent in writing with the approval of the judge, agree on a brief statement of the matters contained in such lost records and papers, and the court may by an order substitute such statement for the lost originals.

" Article 1481: Such substituted copies, or brief statement of their contents, as the case may be, made up under the preceding articles of this subdivision, shall be filed with the clerk, and shall constitute a part of the record of the cause, and shall have all the force and effect of the originals."

These articles furnish a very plain and simple mode of substituting lost or destroyed records and papers, and their observance would prevent the reversal of quite a number of judgments. And notwithstanding the clearness and explicitness of the statute, we desire to impress upon the trial courts, and especially the prosecuting attorneys, the necessity of an order of the court, substituting such copies or brief statements of the parties. This is, we think, *absolutely* necessary; for, without such an order or decree, there is no substitution, and hence no record or papers in lieu of those lost or destroyed.

We are of the opinion that the court erred in permitting the destroyed record to be substituted in the manner shown by this record. And if, in fact, such an entry was made, and the same was destroyed, the district attorney should have proceeded to substitute the same in the manner prescribed in the articles above cited. And because the said record was not substituted in the manner pointed out by the statute, an important part of the record was wanting, and the

motion to quash should have been sustained. We will not dismiss the prosecution, however, because there is no defect in the indict-ment as to matter of substance. We will remand, so that, if such an entry was made, the district attorney may substitute the same in a legal manner.

The indictment in this case charges the defendant with the em-bezzlement of $67.50, the property of Mrs. Margaret Caldwell. It is alleged that Mrs. Caldwell delivered to the defendant $67.50 to be sent to, and paid to, the treasurer of the State as a payment upon her school land, and that the defendant embezzled, and converted to his own use, this money.

Upon the trial the State introduced as a witness Mr. Randolph, who testified in substance that he had been examining clerk in the treasurer's office for about four years; that it was his duty to look into the work of the other clerks, and correct such errors as he might find; that it was his duty to see and examine all letters filed in the office accompanied by remittances, and to see that remit-tances were properly credited; that he had carefully examined the books in the office from the 12th of September, 1881, to October, 1883; that he was not the treasurer nor the chief clerk, nor did he receive or open any letters addressed to the treasurer; that the books did not show that the defendant had paid to the treas-urer, or into the office, the sum of $67.50, or any other amount, on account of Mrs. Caldwell; that he could not testify to en-tries made upon the books independent of memoranda; that the memoranda he held in his hand was made by another clerk from data furnished by the witness, and was made in 1884. The wit-ness, however, had compared the memoranda with the books, and found them correct. Besides, witness, independent of the memo-randa, could testify that there appeared no credit to the defendant on the books on account of Mrs. Caldwell, between the dates of September, 1881, and October, 1884. It was not his duty to receive money sent to the treasurer's office, or to make entries upon the books therein. He could not state of his own knowledge that no money had been paid thereon by the defendant. There were eight or nine clerks in the office. The defendant objected to this evi-dence.

We are of the opinion that the court did not err in overruling the objection. The State was attempting to prove that the books of the office did not contain certain entries,— not to prove the contents of the record. This, we think, may be done by a witness who is familiar with the business of the office, and has examined the

books with the view of ascertaining the facts. We are not discussing the force of such testimony.

The counsel for the appellant insists that the evidence does not warrant the verdict. In this we agree with the counsel. The appellant, as agent and attorney, received the money to send to the treasurer of the State. Now, if he sent the money, whether received at the office or not, he would not be guilty. And if the money was received by the treasurer or any one in the office, he would not be guilty, whether or not an entry was made in the books. The presumption would be that, if received, an entry would be made. But this presents simply a question of possibilities, which is this: Is it more probable that the entry would be made if the money had been received than that the defendant is innocent? The defendant is presumed to be innocent until he is proved guilty beyond a reasonable doubt. Shall the presumption in favor of the entry be made to prevail over the presumption that the defendant is not a felon? Evidently not.

Again: Suppose that the treasurer or some clerk in the office did receive the money and appropriated it to his own use, and of course failed to make the entry. Now, the law presumes the defendant to be as innocent and guiltless as the treasurer. Hence the necessity of proving by the treasurer that he did not receive the money. This must be done by *the best evidence*, to wit: by introducing him on the stand as a witness, and not by the circumstance that no such fact appeared upon the books of the office. (*Childers* v. *The State*, 16 Texas Ct. App., 524.)

But it may be urged that, as appellant stated that he had sent the money and had the treasurer's receipt for the same, the burden shifted upon him to adduce the receipt, and, failing in this, the State's case is established; that the fact is peculiarly within his knowledge, and that he can make the proof by introducing the receipt. Now what is the rule upon this subject? It is this: When the defenses are so extrinsic as to require in their support a preponderance of proof as distinguished from defenses as to which it will be sufficient for an acquittal to throw a reasonable doubt on the case of the prosecution, the burden is on the defendant. And the principal illustrations of such defenses are licenses or authorizations from the State, and pleas of former acquittal or conviction. (Whart. Cr. Ev., sec. 332.)

But suppose the State has only made a *prima facie* case, not showing the guilt of the defendant beyond a reasonable doubt, and the defendant has it in his power to show his innocence and fails to

do so, will this fact lend additional probative force to the criminating facts of the prosecution? Certainly not. The defendant is not bound or required to adduce evidence until a case has been made against him, such as will warrant his conviction. The principle of reasoning, not law, being that when facts have been proved against the defendant, and he has it in his power to explain and refute these facts, and refuses to do so, the inference is that the facts and circumstances are true; but his failure cannot possibly give additional force to these facts.

Let us take the case in hand, and see if it was in the power of the defendant to adduce the receipt. Before this prosecution was thought of, when spoken to by Mrs. Caldwell, the defendant stated that he had sent the money, and had the receipt of the treasurer. Now, is it a fact that all men preserve such documents? May he not have mislaid, thrown away or destroyed the receipt? There is no proof that he said or pretended to have the receipt after this prosecution was commenced, or even threatened. How, then, can we, in justice or reason, hold him to a production of the receipt until it is clearly shown that he stated that he had the same up to the trial, or at least up to the time when this prosecution was threatened. To invoke the rule, the proof of the prosecution must clearly show the defendant's ability to make the required proof. As bearing upon this question we refer to sections 330, 331, 332, 333 and 334 of Mr. Wharton's work on criminal evidence (8th ed.).

For the reasons above indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered April 18, 1885.]